Bethie **PRIDE**, Widow and next of kin of Carl L. Pride, Deceased, Plaintiff,

v.

**THE BIC CORPORATION and Societe Bic, S.A., Defendants.**

No. 3:96–CV–445.

United States District Court, E.D. Tennessee.

Sept. 18, 1998.

Sidney W. Gilreath, Gilreath & Associates, Knoxville, TN, John W. Andrews, Tampa, FL, for plaintiff.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, TN, Thomas I. Carlton, Jr., Joseph R. Wheeler, Cornelius & Collins, LLP, Nashville, TN, for defendants.

### MEMORANDUM OPINION

JARVIS, Chief Judge.

The pretrial motions in this case were referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by order of reference, for disposition or a report and recommendation, as appropriate. On May 12, 1998, the United States magistrate judge entered a memorandum and order disposing of the then-pending non-dispositive motions and submitted a report and recommendation regarding defendants' motion to exclude the testimony of plaintiff's expert witnesses and defendants' motion for summary judgment. The magistrate judge previously held an evidentiary hearing on April 14 and 15, 1998, to determine the admissibility of the testimony of plaintiff's experts pursuant to Rule 104, Federal Rules of Evidence, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (*Daubert*). The magistrate judge ulti-

mately recommended that defendants' motion to exclude the testimony of plaintiff's expert witnesses and motion for summary judgment should be granted. Plaintiff now appeals from the memorandum and order and objects to the report and recommendation. Plaintiff has also filed five motions subsequent to the submission of the report and recommendation. The court will consider each of these appeals, objections, and motions in turn.

## I.

### The Memorandum and Order

The United States magistrate judge entered a memorandum and order on May 12, 1998, disposing of eight non-dispositive pretrial motions. The standard of review of those rulings by this court is limited to whether the rulings were "clearly erroneous or contrary to law." Rule 72(a), Federal Rules of Civil Procedure.

This case was originally set for trial on April 14, 1998. Ultimately, because of a motion to strike the testimony of plaintiff's proposed experts was filed, a *Daubert* hearing was held on April 14 and 15, 1998. In addition, a number of non-dispositive motions were filed by both parties, and they were the subject of the magistrate's memorandum and order of May 12, 1998. Those motions were as follows: (1) Bic's motion to stay discovery and exclude late-disclosed expert witness information, for sanctions and to dismiss [Court File # 63]; (2) plaintiff's motion for leave to file attached documents in opposition to Bic's motion for summary judgment [Court File # 84]; (3) for acceptance of plaintiff's response (dated April 7, 1998) to defendants' motion to exclude testimony of plaintiff's expert witness [Court File # 85]; (4) to strike statement of Paul Labrum's affidavit [Court File # 86]; (5) for leave to file with the court engineer's videotaped test of failure to extinguish Bic lighter exemplars in opposition to Bic's motion for summary judgment [Court File # 88]; (6) to file documents of other similar incidents in opposition to Bic's motion for summary judgment [Court File # 90]; (7) to continue the *Daubert* hearing as to Robert E. Davis until his appearance at trial, or alternatively, to allow plaintiff to proffer his deposition, Rule 26(b) report and CV on April 14, at the presently scheduled hearing [Court File # 91]; and (8) for leave to file an additional set of facts and argument to Bic's motion to stay discovery, to exclude late-disclosed witness information, for sanctions and motion to dismiss dated March 16, 1998 [Court File # 92]. Bic filed a motion to stay discovery and exclude late-disclosed expert witness information, for sanctions, and to dismiss, requesting the court to stay all further depositions, including discovery depositions of Bic and its expert witnesses, Mr. Paul Labrum and Dr. Lawrence Broutman, as a result of the plaintiff's violation of the court's protective order and the improper withholding of expert witness information by plaintiff's counsel, John W. Andrews.

█ The magistrate judge found that plaintiff had failed to comply with the provisions of Rule 26(a)(2) and the protective order entered in this case. However, as a sanction, the magistrate judge declined to dismiss the case or impose fees or costs upon the plaintiff. Instead, the magistrate judge found that staying discovery and excluding late-disclosed expert witness information from the plaintiff was an appropriate sanction. This court finds that imposition of that sanction was substantially justified.

Plaintiff argues that she was prejudiced by this ruling because it prevented her from taking the discovery depositions of the defendants' experts prior to the *Daubert* hearing. However, as noted by the magistrate judge, it was not the reliability and/or relevance of the defendants' experts' opinions that was in question at the *Daubert* hearing, but rather the plaintiff's. The defendants' experts' testimony at the hearing was for the purpose of pointing

out the flaws in the reasoning of the plaintiff's experts in forming their opinions regarding product defect and proximate cause. I further conclude that plaintiff suffered no prejudice in being unable to take the depositions of the defendants' experts prior to the *Daubert* hearing. I agree with the magistrate judge's notation that:

> Plaintiff had the opportunity to hear and cross examine Bic's remaining expert witnesses, Dr. Broutman and Mr. Labrum, and had ample opportunity to cross examine them. Plaintiff was also given the opportunity to examine all documents presented by these witnesses which plaintiff had not seen previously, and the *Daubert* hearing continued over two days. The Court agreed to allow plaintiff's counsel whatever time was necessary to prepare for the examination of Bic's witnesses. Thus, the Court cannot find that plaintiff was prejudiced in any way by going forward with the *Daubert* hearing prior to taking the depositions of Dr. Broutman and Mr. Labrum.

Memorandum and Order at p. 30. I conclude that the magistrate judge's ruling on this motion was neither clearly erroneous nor contrary to law.

Plaintiff filed a motion for leave to file attached documents in opposition to Bic's motion for summary judgment [Court File # 84]. This motion was granted, plaintiff was allowed to file all of these documents in the record, and they were considered by the magistrate judge. Accordingly, plaintiff has no ground for appealing the magistrate's ruling on this motion.

Plaintiff also requested acceptance of plaintiff's response to defendants' motion to exclude the testimony of plaintiff's expert witnesses [Court File # 85]. This motion was also granted and plaintiff has no ground for appeal.

Plaintiff filed a motion to strike the last sentence of ¶ 5 in Paul Labrum's affidavit of February 26, 1998, which stated, "I am advised that at all times since 1997, Bri-

quette Jetable 75 has been a solvent entity subject to service of process under the Hague Convention." The magistrate judge properly noted that Mr. Labrum had personal knowledge of those facts. Accordingly, plaintiff's motion to strike the statement in Mr. Labrum's affidavit was denied, and plaintiff has no ground for appealing that ruling.

Plaintiff moved to file with the court an engineer's videotape test of failure to extinguish Bic lighter exemplars in opposition to Bic's motion for summary judgment [Court File # 88]. The motion was granted and the tape was considered. Accordingly, plaintiff has no ground to appeal that ruling.

Plaintiff filed a motion to file documents of other similar incidents in opposition to Bic's motion for summary judgment [Court File # 90]. The magistrate judge held that evidence of alleged prior accidents or purportedly similar occurrences could not be introduced into evidence unless they were proven to be "substantially similar" to the accident or occurrence in question. He also ruled that plaintiff had not carried the burden of proving substantial similarity between any prior accidents and her own. Further, the magistrate noted that this issue was not before the court relative to the *Daubert* hearing and that the proffered documents were irrelevant as to the issue of whether plaintiff's scientific evidence was sufficiently relevant and reliable to be admissible. Accordingly, plaintiff's motion was denied. I find that the magistrate judge's ruling was not clearly erroneous or contrary to law.

Plaintiff filed a motion to continue the *Daubert* hearing as to Robert E. Davis until his appearance at trial, or alternatively, to allow plaintiff to proffer his deposition, Rule 26(b) report, and CV on April 14, at the presently scheduled hearing [Court File # 91]. Plaintiff appeared at the hearing on April 14 without the expert Mr. Davis in attendance. Although plain-

tiff was told to have his experts available for the *Daubert* hearing and did not provide an adequate excuse for not doing so, all parties agreed to allow the hearing to go forward despite Mr. Davis' absence. The magistrate judge allowed Mr. Davis' deposition, Rule 26(b) report, and curriculum vitae to be entered into the record at the *Daubert* hearing, and those were considered by the magistrate judge in his report and recommendation. Accordingly, plaintiff has no ground for appealing the magistrate's orders with respect to this issue.

Finally, plaintiff filed a motion for leave to file an additional set of facts and argument in response to Bic's motion to stay discovery, to exclude late-disclosed witness information, for sanctions and to dismiss. This motion was granted by the magistrate judge, *see* memorandum and order at p. 53, and plaintiff has no ground for appealing this order by the magistrate judge.

In summary, the court finds that none of the magistrate judge's orders were clearly erroneous or contrary to law, and plaintiff's appeals from them are dismissed.

## II.

### *The Report and Recommendation*

The United States magistrate judge conducted an evidentiary hearing on April 14 and 15, 1998, to determine the admissibility of the testimony of plaintiff's experts pursuant to Rule 104, Federal Rules of Evidence, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (*Daubert*). Following that hearing, the magistrate judge, in a report and recommendation dated May 12, 1998, recommended that defendants' motion to exclude testimony of plaintiff's expert witnesses and motion for summary judgment be granted. This court has reviewed *de novo* the record in this case, the hearing transcript, the magistrate's report and recommendation, and the plaintiff's objections thereto, and for the reasons set out below is in agree-

ment with the United States magistrate judge. Accordingly, the magistrate judge's report and recommendation [Court File # 106] will be accepted in whole.

■ The defendant contends that none of plaintiff's three proposed experts are qualified to testify as an expert or offer an expert opinion regarding a manufacturing defect in the subject lighter. In addition, defendant contends that none of the plaintiff's proffered experts, on the issue of causation, can present opinion testimony that satisfies either the reliability or relevance requirements of *Daubert*. The court agrees. None of the plaintiff's experts qualify as an expert by "knowledge, skill, experience, training, or education" to offer an expert opinion regarding a manufacturing defect in the lighter. McGinley and Davis both conceded as much in their testimony. Dr. Sissom's claimed expertise with regard to product defects and lighters. With respect to the specific product in this case, Dr. Sissom's expertise consisted solely of his examination of and testimony concerning lighters in other Bic cases and viewing the manufacturing specifications for the J–6 lighter. Testimony of engineers may be excluded if it is not particular to the science involved in the case. Dr. Sissom's general engineering expertise is clearly not particular to the science involved in this case, and I am of the opinion that the plaintiff did not demonstrate that Dr. Sissom qualifies as an expert in the area of product defects and lighters by virtue of his "knowledge, skill, expertise, training, or education."

■ More importantly, even if Dr. Sissom were qualified as an expert to testify regarding product defects in lighters, the plaintiff failed to establish the reliability requirements of *Daubert*. Dr. Sissom testified that he used general principles of physics to reach his conclusions. Those general principles do not support the conclusion he reached that the "cockeyed" nature of the globe seal was a manufacturing defect. He could not explain how the globe seal became cockeyed, other than to

"assume" it was a manufacturing defect. He gave no explanation of how he eliminated from consideration the very real possibility that when the jet/globe seal assembly was melted, as it obviously was, the globe seal became "cockeyed." Dr. Sissom did no test to determine what might happen to a jet/globe seal assembly when exposed to external temperatures in excess of 775 degrees. Quite simply he did no tests to back up his opinions and his opinions are not supported by any scientific methodology. Dr. Sissom simply observed the cockeyed position of the globe seal following the fire and jumped to the conclusion that it was a manufacturing defect and that it also caused the fire. Those conclusions are not supported by any methodology and were simply assumptions. Such assumptions do not satisfy the reliability requirements of *Daubert*.

In addition, Dr. Sissom's opinion does not satisfy the remaining *Daubert* factor which goes to relevance. This factor goes to whether the expert testimony proffered is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. Dr. Sissom's testimony does not "fit" the facts in this case. He testified that the fire was caused by a leak from a defective globe seal. However, the witness line on the inner bottom surface of the valve orifice demonstrated that prior to the fire the globe seal was properly seated. The fact that the globe seal was "cockeyed" after the fire does not aid the jury in determining whether there was a product defect when the lighter left the manufacturer's hands. In fact, it does nothing more than establish that the lighter was exposed to extreme external temperatures.

■ The court also finds with respect to causation that the testimony of plaintiff's experts does not satisfy either the reliability or relevance elements of *Daubert*. With regard to liability, the plaintiff's experts did no tests to verify their opinion that the fire was the result of an afterburn or "failure to extinguish" scenario. Plaintiff submitted two videotapes which purported to show what would occur in an afterburn situation, and the tapes showed a result inconsistent with plaintiff's opinion—those results showed that, after several minutes of burning at a 45˜ angle, melting at the top of the lighter ultimately produced a "flamethrower" effect, not the explosion of the lighter body which occurred in this case. The only test results showing an explosion of the lighter body were those of Dr. Broutman where the lighter body was exposed to an external heat source coming from below. Thus, there was no methodology used by any of the plaintiff's experts to support their conclusion that this was a "failure to extinguish" situation. Accordingly, plaintiff's methodology for reaching the experts' conclusions regarding causation is unreliable.

Finally, I agree that the plaintiff's experts' opinions on causation would not aid the jury in resolving an issue of fact in this case. Their opinions that this was a "failure to extinguish" fire is not supported by any methodology. Rather, that opinion appears to be based on the conclusion that the lighter was the only source of ignition in the area and therefore that a *defect* in the lighter must have caused the fire. This conclusion does not fit the facts of the case because it ignores other possible scenarios, such as that plaintiff lit his cigarette or other item with a properly functioning lighter, put the lighter in his pocket, and that the fire started from this secondary source. I agree that the jury would not be aided by the unverified speculations of the plaintiff's experts. Accordingly, I conclude that under Rule 104, Federal Rules of Evidence, and *Daubert*, none of plaintiff's experts are qualified to give opinion testimony regarding a manufacturing defect in the lighter or causation of the fire in this case. To the extent they would attempt to so testify, defendants' motion to strike their testimony will be granted.

## III.

### *The Summary Judgment Motion*

In Tennessee, a manufacturer of a product will not be liable for injury caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer. T.C.A. § 29–28–105(a). In addition, another essential element of any products liability action in Tennessee is that the defect in question proximately caused the plaintiff's injury. The plaintiff must "trace the injury to some specific error in construction or design of the [product]. . . ." *Browder v. Pettigrew*, 541 S.W.2d 402, 404 (Tenn. 1976). Although in some cases the fact of the accident itself plus circumstantial evidence may be sufficient to prove a defect, where a technically complex problem is involved, expert testimony may be required to show product defect because neither lay people nor courts possess reliable knowledge in such technical matters. *See Fulton v. Pfizer Hospital Products Group, Inc.*, 872 S.W.2d 908, 912 (Tenn.Ct.App. 1993).

The defect alleged in this case is in a technically complex product. Expert testimony is necessary with respect to the alleged defect and with respect to the causation of Mr. Pride's death. I agree that without admissible expert testimony on the alleged product defect and causation, plaintiff cannot prove either of these two essential elements of her case. Because plaintiff's experts offered only speculation to link a defect in the Bic lighter to the fire, a reasonable jury could not return a verdict in favor of plaintiff. Therefore, defendants' motion for summary judgment [Court File # 58] will be granted.

## IV.

### *Plaintiff's Late–Filed Motions*

Subsequent to the submission of the magistrate judge's report and recommendation, the plaintiff has submitted five motions as follows:

(1) Plaintiff's motion for leave to modify the scheduling order and to accept additional testimony by Dr. Leighton Sissom [Court File # 116];

(2) Plaintiff's motion for leave of court to order Bic to disclose the identity of experts that have qualified to testify for a plaintiff as to the manufacturing defect and design defect as alleged in this case [Court File # 117];

(3) Plaintiff's motion for leave to modify the scheduling order to add David Kessinger as an expert, or in the alternative, as a rebuttal expert, and to allow plaintiff to proffer additional testing reports and testimony by experts Sissom and McGinley [Court File # 118];

(4) Plaintiff's motion for leave to allow Dr. Leighton Sissom to visit the Bic lighter plant [Court File # 119]; and

(5) Plaintiff's motion for leave to modify the scheduling order to add David Kessinger as an expert witness and/or as a rebuttal expert and reopen the *Daubert* inquiry to consider additional evidence, or in the alternative, to stay the court's ruling [Court File # 120].

The court has reviewed each of these five motions and concludes that they are a transparent attempt to reopen the *Daubert* hearing now that the weaknesses in the plaintiff's expert testimony have been pointed out. It would be highly prejudicial to the defendants to reopen the *Daubert* inquiry at this time. Plaintiff had ample opportunity to locate experts for this case, and her experts had ample opportunity to develop their theories on how the accident occurred, to explain their underlying methodology, and test their theories prior to the *Daubert* hearing. It is contrary to all rules of fairness and proper procedure to reopen a hearing or trial simply because one party is dissatisfied with the outcome. Moreover, Bic has no obligation to educate plaintiff's experts and qualify them to testify as is the apparent intention of plaintiff's motion to order Bic to disclose the

identity of experts who have testified for a plaintiff as to the manufacturing or design defect alleged in this case and the motion for relief to allow Dr. Sissom to visit the Bic lighter plant.

In light of the foregoing, plaintiff's five post-hearing motions [Court Files # 116, # 117, # 118, # 119, and # 120] will be denied. Defendants' motion to strike the five motions [Court File # 122] will be denied as moot. Defendants' motion to require timely filing of objections by plaintiff [Court File # 111] will also be denied as moot.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that plaintiff's appeal from the memorandum and order of the Honorable Thomas W. Phillips, United States Magistrate Judge, dated May 12, 1998, is DISMISSED.

In addition to the foregoing, I find that defendants' motion to stay discovery and exclude late-disclosed expert witness information, for sanctions and to dismiss [Court File # 63] granted by the magistrate judge in his memorandum and order, is neither clearly erroneous nor contrary to law and it is AFFIRMED. With regard to plaintiff's motion for leave to file documents in opposition to Bic's motion for summary judgment [Court File # 84], motion for acceptance of plaintiff's response to defendants' motion to exclude testimony of plaintiff's expert witness [Court File # 85], plaintiff's motion to strike statement of Paul Labrum [Court File # 86], and plaintiff's motion for leave to file with the court an engineer's videotaped test of failure to extinguish Bic lighter exemplars in opposition to Bic's motion for summary judgment [Court File # 88], I find that plaintiff has no grounds for appealing these rulings, and the appeals are DISMISSED. The magistrate judge's finding with regard to plaintiff's motion to file documents of other similar incidents in opposition to Bic's motion for summary judgment [Court file # 90] is likewise neither clearly erroneous nor contrary to law, and plaintiff's appeal therefrom is DISMISSED. Plaintiff having no ground for appealing the magistrate judge's order regarding plaintiff's motion to continue the *Daubert* hearing as to Robert E. Davis until his appearance at trial, or alternatively, to allow plaintiff to proffer his deposition, Rule 26(b) report, and CV on April 14 [Court File # 91] and her motion for leave to file an additional set of facts and argument to Bic's motion to stay discovery, to exclude late-disclosed witness information, for sanctions and motion to dismiss [Court File # 92], her appeals of these rulings by the magistrate judge are DISMISSED.

The following five motions submitted by plaintiff following the magistrate judge's report and recommendation [Court Files # 116, # 117, # 118, # 119, and # 120] are DENIED. Defendants' motion to strike the five motions [Court File # 122] is DENIED AS MOOT. Defendants' motion to require timely filing of objections by plaintiff [Court File # 111] is likewise DENIED AS MOOT.

It is finally ORDERED that the report and recommendation [Court File # 106] filed by the magistrate judge on May 12, 1998 is ACCEPTED IN WHOLE, whereby defendants' motion to exclude testimony of plaintiff's expert witnesses and motion for summary judgment [Court File # 58] is GRANTED, and this action DISMISSED.